UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIERAN MCQUAID, on behalf of himself, individually, and on behalf of all others similarly-situated,<br><br>       Plaintiff,<br><br>  -against-<br><br>CAPITAL STACK, LLC, and EPRODIGY ACH, LLC, and EPRODIGY OPERATIONS, LLC, and DAVID RUBIN, individually, and BRIAN STULMAN, individually,<br><br>       Defendants. | **COMPLAINT**<br><br>**Docket No.:**<br><br>Jury Trial Demanded |

KIERAN MCQUAID ("Plaintiff"), on behalf of himself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs," as those terms are defined below), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C, as and for his Complaint against CAPITAL STACK, LLC, ("Capital Stack"), EPRODIGY ACH, LLC ("ACH"), and EPRODIGY OPERATIONS, LLC, ("Operations" and collectively with ACH, where appropriate, as "eProdigy"), (all three, together where appropriate, as "Lenders"), and DAVID RUBIN ("Rubin"), individually, and BRIAN STULMAN ("Stulman"), individually, (all five, collectively where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.  This is a civil action for damages and equitable relief based upon the willful violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor

Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12 § 142-2.2; (iv) the minimum wage provisions of the NYLL, NYLL § 652(1), 12 NYCCRR § 142-2.1; (v) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (vi) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); (vii) the NYLL's requirement that employers furnish employees with their earned commissions in a timely manner, NYLL § 191-C; and (viii) any other claim(s) that can be inferred from the facts set forth herein.

2.     Plaintiff worked for Defendants - - three Manhattan-based limited liability companies that operate as a single enterprise and/or joint employer that lend money to small and medium-sized businesses, as well as their Chief Executive Officer and Executive Vice President, both of whom served as Plaintiff's direct supervisors - - in various positions from on or about August 1, 2014 until November 5, 2015.  As described below, throughout his employment, Defendants willfully failed to pay Plaintiff the wages lawfully due to him under the FLSA and the NYLL.  Specifically, for the entirety of his employment, Defendants required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours each week or virtually each week, yet Defendants willfully misclassified him as an exempt "manager" and paid him a flat weekly salary, and therefore failed to compensate Plaintiff at any rate of pay, let alone at the statutorily required rate of one and one-half times his regular rate of pay for all hours that he worked in excess of forty each week, in violation of the FLSA and the NYLL.  Moreover, Plaintiff's weekly wages fell below the minimum that either the FLSA or the NYLL or both required at various points of his employment for each hour worked, resulting in minimum wage violations under either or both statutes.

3.      Defendants also violated the NYLL by failing to provide Plaintiff with accurate wage statements on each payday or with any wage notice upon hire.

4.      Defendants have paid and treated all of their sales associates, "manager of sales," "ISO manager," and "collections manager" employees in the same manner.

5.      Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' violations of the FLSA.  Plaintiff brings his claims under the NYLL described in paragraphs 2 and 3 above on behalf of himself, individually, and on behalf of any FLSA Plaintiff who opts-into this action, as that term is defined below.

6.      Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of Defendants' same violations of the NYLL and the supporting New York State Department of Labor regulations.

7.      Moreover, on an individual basis only, Plaintiff brings claims for Defendants' failure to timely pay him his earned commissions in violation of the NYLL, as described more fully below.

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

9.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

10.     At all relevant times herein, Plaintiff worked for Defendants in New York and was and an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCCRR.

11.     At all relevant times herein, Defendant Capital Stack was and is a Nevada limited liability company, with its principal place of business located at 11 Broadway, 8th Floor, New York, New York 10004.

12.     At all relevant times herein, Defendant ACH was and is a Delaware limited liability company, with its principal place of business located at 11 Broadway, 8h Floor, New York, New York 10004.

13.     At all relevant times herein, Defendant Operations was and is a New York limited liability company, with its principal place of business located at 11 Broadway, 8th Floor, New York, New York 10004.

14.     At all relevant times herein, Defendant Rubin was and is the Chief Executive Officer of the three entities comprising Defendant Lenders.

15.     At all relevant times herein, Defendant Stulman was and is the Executive Vice President of the three entities comprising Defendant Lenders.

16.     At all relevant times herein, all Defendants were "employers" within the meaning of the FLSA and the NYLL.  Additionally, during all relevant times, Defendant Lenders' qualifying annual business exceeded and exceeds $500,000.00, and Defendant Lenders were and are engaged in interstate commerce within the meaning of the FLSA as they employed two or more

employees, interacted with, received payments from, and loaned money to out-of-state businesses, and marketed their services online to business outside of New York, the combination of which subjects Defendant Lenders to the FLSA's overtime and minimum wage requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime and minimum wage compensation, and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on his own behalf, as well as on behalf of those in the following collective:

> Current and former sales associates, "manager of sales," "ISO manager," "collections manager" employees, and other employees with similar job duties and/or titles who during the applicable FLSA limitations period, performed any work for Defendants, and who consent to file a claim to recover damages for minimum wages and/or overtime compensation that is legally due to them ("FLSA Plaintiffs").

18.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; (5) were not paid the required one and one-half times their respective regular rates of pay, or one and one-half times the minimum wage rate, if greater, for all hours that they worked per workweek in excess of forty; and/or (6) were not paid at least the statutory minimum wage rate for all hours worked.

19.     At all times during the applicable FLSA limitations period, Defendants have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay, or one and one-half times the

5

minimum wage rate, if greater, for all hours worked each workweek above forty, and of the requirement to pay Plaintiff and all FLSA Plaintiffs at least the statutory minimum wage rate for all hours worked, yet they purposefully and willfully chose and choose not to do so.

20.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, and/or at the statutorily-set minimum wage for all hours worked, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

21.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on his own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCCRR.

22.     Under FRCP 23(b)(3), Plaintiff must plead that:

a.     The class is so numerous that joinder is impracticable;

b.     There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

c.     Claims or defenses of the representative are typical of the class;

d.     The representative will fairly and adequately protect the class; and

e.     A class action is superior to other methods of adjudication.

23.     Plaintiff seeks certification of the following FRCP 23 class:

Current and former sales associates, "manager of sales," "ISO manager," and "collections manager" employees, and other employees with similar job duties and/or titles, who during the applicable NYLL limitations period, performed any work for Defendants within the State of New York ("Rule 23 Plaintiffs").

<u>Numerosity</u>

24.     Throughout the six-year period predating this action's commencement, Defendants have, in total, employed at least forty employees that are putative members of this class.

<u>Common Questions of Law and/or Fact</u>

25.     There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require Rule 23 Plaintiffs to perform; (2) the manner of compensating Rule 23 Plaintiffs; (3) whether Defendants paid and pay Rule 23 Plaintiffs overtime wages at one and one-half their respective regular rates of pay, or one and one-half the minimum wage, if greater, for all hours worked over forty in a week; (4) whether the Defendants failed to pay Rule 23 Plaintiffs at least at the statutory minimum wage rate for all hours worked; (5) whether Defendants failed and fail to furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by NYLL § 195(3); (6) whether Defendants failed and fail to furnish Rule 23 Plaintiffs with accurate wage notices at the time of their hire containing the information required by NYLL § 195(1); (7) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (8) whether Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and the NYCCRR; and (9) if so, what constitutes the proper measure of damages.

<u>Typicality of Claims and/or Defenses</u>

26.     As described in the "Background Facts" section below, Defendants employed Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL and the NYCCRR.  Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom he seeks to represent, as the Rule 23 Plaintiffs work and/or have worked for Defendants in New York, and Defendants did and do

not pay them overtime wages for all hours worked over forty each week or at least at the minimum wage rate for all hours worked, nor did and do Defendants furnish them with proper wage statements or wage notices when the law requires.  Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL and the NYCCRR to be paid all of their earned overtime wages, to be paid at least the statutory minimum wage rate for all hours worked, and to be furnished with accurate wage statements on each payday and wage notices upon hire.  Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and the NYCCRR.  Plaintiff and the Rule 23 Plaintiffs all have suffered injury, including lack of compensation or under-compensation due to Defendants' common policies, practices, and patterns of conduct.  Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

<u>Adequacy</u>

27.    Plaintiff, as described below, has worked the same or similar hours as the Rule 23 Plaintiffs throughout their employment with Defendants.  Defendants regularly failed to pay Plaintiff overtime wages at the rate of time and one-half his regular rate of pay, or one and one-half the minimum wage rate, if greater, for hours worked over forty each week, did not pay Plaintiff at least the statutory minimum wage rate for all hours worked, did not furnish Plaintiff with accurate wage statements on each payday, and did not furnish Plaintiff with an accurate wage notice upon hire, which is substantially similar to how the Defendants paid and treated and pay and treat the Rule 23 Plaintiffs.  Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters pertaining to him raised in this Complaint and that will be raised in the Defendants' Answer.  Thus, Plaintiff would properly and adequately represent the

current and former employees whom the Defendants have subjected to the treatment alleged herein.

28.     Additionally, Plaintiff's counsel has substantial experience in this field of law.

Superiority

29.     Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, Defendants have treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

30.     Any lawsuit brought by any sales associates, "manager of sales," "ISO manager," "collections manager," or other employee of Defendants with similar titles and job duties would be identical to a suit brought by any other similar employee for the same violations.  Thus, separate litigation would risk inconsistent results.

31.     Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

32.     The Lender Defendants, comprised of the three entities described above, operate as a single employer and/or joint employer, offering, while based on Manhattan, alternative funding lender services for small and medium-sized businesses across the United States.  The three Lender Defendants described above all: have an interrelation of operations in providing lending services by sharing employees and clients with one another; concurrently control labor relations between employees and management; are commonly managed by the same personnel, namely and mainly Defendants Rubin and Stulman; contain internal cross-references on their websites referring to one

another and/or linking to one another's web pages; and are commonly owned and controlled financially.

33.     Defendant Rubin was and is the Chief Executive Officer of the Lenders and, along with Defendant Stulman, was Plaintiff's day-to-day supervisor throughout his employment.  To that end, Defendant Rubin personally hired Plaintiff,  established Plaintiff's rate of pay, determined Plaintiff's schedule, and assigned and determined Plaintiff's job duties and various titles throughout his employment.

34.     Defendant Stulman was and is the Executive Vice President of the Lenders and, along with Defendant Rubin, was also Plaintiff's day-to-day supervisor from in or around February 2015 until November 5, 2015.  To that end, Defendant Stulman, throughout the time period where his employment overlapped with Plaintiff's, and also in conjunction with Defendant Rubin, established Plaintiff's rate of pay, determined Plaintiff's schedule, and assigned and determined Plaintiff's job duties and various titles throughout his employment.  Moreover, Defendant Stulman personally fired Plaintiff.

35.     Defendant Capital Stack originally hired Plaintiff on or about August 1, 2014 as a sales associate.

36.     As a sales associate, Plaintiff's primary job duties included pitching loan deals to business owners from Defendants' office in New York, New York, and receiving and processing applications and bank statements from business owners in connection with their loan applications.

37.     From August 1, 2014 through in or around November 2014, as a sales associate, Defendants paid Plaintiff a weekly salary of $350.00, which was intended to cover only the first forty hours that Plaintiff worked each week, and which yielded a regular hourly rate of $8.75 per hour.

38.     In or around November of 2014, Plaintiff became a "manager of sales."  While Plaintiff's title changed, his job duties remained substantially the same and he was a "manager" in name only, as his primary duties continued to involve pitching and closing loan deals to business owners.

39.     From in or around November of 2014 through in or around February 2015, as a "manager of sales," Defendants paid Plaintiff a weekly salary of $400.00, which was intended to cover only the first forty hours that Plaintiff worked each week, and which yielded a regular hourly rate of $10.00 per hour.

40.     In or around February of 2015, Plaintiff became an "ISO manager."  As an ISO (independent sales organization) manager, Plaintiff worked with third-party ISOs, which were independent brokers or salespeople from other companies, to provide funding for deals that the ISOs could not fund on their own.  Plaintiff also continued to perform his primary duty of pitching and closing loan deals to business owners, as described above.

41.     From in or around February of 2015 through in or around August of 2015, as an "ISO manager," Defendants paid Plaintiff a weekly salary of $500.00, which was intended to cover only the first forty hours that Plaintiff worked each week, and which yielded a regular hourly rate of $12.50 per hour.

42.     In early 2015, Defendant Rubin created Defendant eProdigy to perform the same functions as Defendant Capital Stack and to hold Defendant Capital Stack as a subsidiary.

43.     Defendant eProdigy had and has as its principal place of business the same address as Defendant Capital Stack, the same two people who run the business as before - - Defendant Rubin and Defendant Stulman - - and uses the same employees as Capital Stack.  To that end, in

June 2015, Defendants instructed Plaintiff to substitute "eProdigy" for "Capital Stack" in his email signature.

44.     In or around August 2015, Defendants again changed Plaintiff's title, this time to a "collections manager," a role which he held for the remainder of his employment with Defendants. Again, during this time, Plaintiff also continued performing his primary duty of pitching and closing loan deals to business owners.

45.     From in or around August 2015 until the termination of Plaintiff's employment on November 5, 2015, as a "collections manager," Defendants paid Plaintiff a weekly salary of $550.00, which was intended to cover only the first forty hours that Plaintiff worked each week, and which yielded a regular hourly rate of $13.75 per hour.

46.     Despite his various titles as a "manager," at no point during his employment did Plaintiff have any meaningful discretion or managerial responsibilities.  For example, he played no role in employee hiring or firing decisions or employee disciplinary matters, and he was not responsible for determining any employee work schedules.

47.     Throughout his employment, regardless of his title at the time, Defendants required Plaintiff to work, and Plaintiff did work, five days per week, Monday through Friday, from between 7:00 a.m. and 7:30 a.m. until between 5:30 p.m. and 6:00 p.m. each day without a scheduled or uninterrupted break.  In addition, Defendants required Plaintiff to work, and Plaintiff did in fact work, one-to-two Saturdays each month, for approximately six hours per day, from 9:00 a.m. to 3:00 p.m. without a scheduled or uninterrupted break.  Thus, throughout his employment, Defendants required Plaintiff to work, and Plaintiff did work, between fifty-two and one-half hours and sixty-one hours each week, for an average of approximately fifty-seven hours per week.

48.     By way of example only, during the workweek of January 12 through January 18, 2015, Defendants required Plaintiff to work, and Plaintiff did work, sixty-one hours, from 7:00 a.m. to 6:00 p.m. on Monday through Friday, and from 9:00 a.m. to 3:00 p.m. on Saturday.   In exchange for his work this week Defendants paid Plaintiff a flat salary of $400.00, which amounted to a regular rate of pay of $10.00 per hour for his first forty hours only.   Defendants thus paid Plaintiff nothing for the twenty-one hours that Plaintiff worked over forty that week.   Additionally, Defendants paid Plaintiff at a rate below both the federal and state the minimum wage rates this week for all hours worked.

49.     By way of a second example only, during the workweek of October 19 through October 25, 2015, Defendants required Plaintiff to work, and Plaintiff did work, fifty-five hours, from 7:00 a.m. to 6:00 p.m. on Monday through Friday.   In exchange for his work this week Defendants paid Plaintiff a flat salary of $550.00, which amounted to a regular rate of pay of $13.75 per hour for his first forty hours only.   Defendants thus paid Plaintiff nothing for the eleven hours that Plaintiff worked over forty that week.

50.     Defendants paid Plaintiff on a bi-weekly basis.

51.     On each occasion when they paid Plaintiff, Defendants failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, his actual hours worked per week, or his overtime rates of pay for all hours worked over forty each week.

52.     Additionally, Defendants did not provide Plaintiff with any wage notice at the time of his hire - - neither at Capital Stack nor eProdigy - - let alone one that accurately contained, *inter alia*, Plaintiff's overtime rates of pay as designated by the employer.

53.     Defendants treated and paid Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs in the same manner described to this point herein.

54.     Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

55.     Each hour that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for Defendants' benefit.

56.     Further, throughout his employment, Defendants required that Plaintiff complete at least three loan deals per month.

57.     In addition to his regular salary, Plaintiff also earned commissions equal to one percent of the total loan value sold on any loan deals that he personally completed.

58.     Once Plaintiff completed $50,000.00 worth of loan deals in a given month, his commission percentage increased from one percent to two percent for the value of any loans sold that exceeded the $50,000.00 threshold during any month.

59.     Moreover, as an "ISO manager," Plaintiff also earned commissions equal to one percent of the total amount that Defendants funded with the third-party ISOs with which Defendants had a prior relationship.  For any new ISOs that Plaintiff generated, Plaintiff earned a commission of two percent of the total value that Defendants funded with these new ISOs.

60.     Throughout his employment, though Plaintiff's commissions varied, on average Plaintiff earned approximately $200.00 per month in commissions.

61.     Defendants were to pay Plaintiff his earned commissions on a monthly basis. However, on several occasions, Defendants completely failed to pay Plaintiff his earned commissions.

62.     For example, during the month of September 2015, Plaintiff completed approximately $75,000.00 worth of loan deals, earning a one-percent commission on the first

$50,000.00 of loan deals and a two-percent commission on the additional $25,000.00 of loan deals, for a total earned commission of $1,000.00.

63.     Defendants did not pay Plaintiff any of these earned commissions for the month of September 2015.  Plaintiff estimates that Defendants have failed to pay him approximately $3,000.00 in earned commissions for the entirety of his employment.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the FLSA*

64.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay, or one and one-half the minimum wage, if greater, for all hours worked exceeding forty in a workweek.

66.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

67.     As also described above, Plaintiff and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

68.     Defendants willfully violated the FLSA.

69.     Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay, or one and one-half the minimum wage, if greater.

70.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

15

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Minimum Wages under the FLSA*

71. Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

72. 29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

73. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

74. As also described above, Defendants did not compensate Plaintiff and FLSA Plaintiffs at least at the minimum hourly rate required by the FLSA for all hours worked.

75. Defendants willfully violated the FLSA.

76. At the least, Plaintiff and FLSA Plaintiffs are entitled to the minimum rate of pay required by the FLSA for all hours worked.

77. Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and the NYCCRR*

78. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79. NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay, or one and one-half the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

80.     As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are employees within the meaning of the NYLL and the NYCCRR.

81.     As also described above, Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

82.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay, or one and one-half the minimum wage rate, if greater.

83.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCCRR's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Minimum Wages under the NYLL and the NYCCRR*

84.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

85.     N.Y. Lab. Law § 652 and 12 NYCCRR § 142-2.1 prescribe a minimum wage that employers must pay to their employees for each hour worked.

86.     As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are employees within the meaning of the NYLL and the NYCCRR.

87.     As also described above, Defendants did not compensate Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, at least at the minimum hourly rate required by the NYLL and the NYCCRR for all hours worked.

88.     At the least, Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are entitled to the minimum rate of pay required by the NYLL and the NYCCRR for all hours worked.

89.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCCRR's minimum wage provisions

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

90.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91.     N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

92.     As described above, Defendants, on each payday, failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, with accurate wage statements containing the criteria required under the NYLL.

93.     Prior to February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $100.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

94.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Notices in Violation of the NYLL*

95.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

97.     As described above, Defendants failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, with any wage notice at hire, let alone one accurately containing all of the criteria required under the NYLL.

98.     Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $50.00 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.00.

99.     On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
## ON BEHALF OF PLAINTIFF ONLY
### *Failure to Pay Earned Commissions on a Timely Basis in Violation of the NYLL*

100.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

101.     NYLL § 191-C requires that employers pay salespersons their earned commissions in accordance with the agreed terms of employment, but not less frequently than once each month and not later than within five business days after termination.

102.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

103.     As also described above, Defendants failed to pay Plaintiff all of the commissions that he earned throughout his employment as the NYLL requires.

104.     Plaintiff is entitled to recover for all commissions earned for which Defendants did not timely or ever pay Plaintiff.

105.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's provisions concerning the timely payment of all earned commissions.

## DEMAND FOR A JURY TRIAL

106.     Pursuant to FRCP 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.  An order restraining Defendants from any retaliation against Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs for participation in any form in this litigation;

d.  Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.  Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23;

f.  Designation of Plaintiff and his counsel as class/collective action representatives under the FRCP and the FLSA;

g.  All damages that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages/commissions and any short fall between wages/commissions paid and those due under the law that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for the Defendants' unlawful payment practices;

h.  Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

i.  Awarding Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and an award of a service payment to Plaintiff;

j.  Pre-judgment and post-judgment interest, as provided by law; and

k.      Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated:  New York, New York
        October 9, 2018

                                  Respectfully submitted,

                                  BORRELLI & ASSOCIATES, P.L.L.C.
                                  *Attorneys for Plaintiff*
                                  655 Third Avenue, Suite 1821
                                  New York, New York 10017
                                  Tel.: (212) 279-5000
                                  Fax: (212) 679-5005

                           By:    _____
                                  MICHAEL R. MINKOFF (MM 4787)
                                  ALEXANDER T. COLEMAN (AC 1717)
                                  MICHAEL J. BORRELLI (MB 8533)